Western Transportation Co. v. Hawley.

---

THE WESTERN TRANSPORTATION COMPANY v. THOMAS R. HAWLEY and JOSIAH HOWE.

The fact that the consignee's business address was stated in the bill of lading does not oblige the shipper to depart from his known and usual place of delivery, and deliver the cargo at a pier more contiguous to the consignee's place of business.

Very slight evidence that a person, assuming to act as the defendant's agent, was in fact his agent, should suffice to allow the question to go to the jury; as the defendant has it in his power, now that parties may be witnesses in their own case, to show at once if the fact were otherwise, and that the acts of the agent were without his knowledge or authority.

The facts that the defendant, the consignee, was notified that if the cargo was discharged elsewhere than at the pier where the vessel lay, lighterage would be charged; and that afterwards a written request to send the vessel to another pier came in his name, signed by the person who had acted as his agent in shipping the cargo, who had been seen in and about his office, and who assumed in such request to act as his agent, upon which request the cargo was so delivered,—*Held*, sufficient to warrant a finding on the part of the Jury that it was by the defendants' request that the vessel was moved and the cargo was delivered at another pier.

*Held further*, that the sending of such a request by the defendant, after notification that a charge in such case would be made for lighterage, would be sufficient to support an implied *assumpsit* that the defendant would pay what was customary, if any custom existed, or, if no custom existed, a reasonable compensation.

*Held further*, that the plaintiff's claim upon such an implied agreement would not be limited to the amount actually paid out by them for towing the vessel from one pier to another, but they would be entitled to such an amount of extra compensation as the Jury might fix.

Western Transportation Co. v. Hawley.

Lighterage is the price paid for unloading ships by lighters or boats, and a charge for taking a boat to another pier instead of the usual one of delivery would not be embraced under that term.

Demurrage is only recoverable where it has been expressly stipulated for though where there has been an unreasonable or improper detention of the vessel by the act of the freighter or consignee, damages may be recovered by the owner.

APPEAL by the plaintiff from a judgment at Trial Term, dismissing the plaintiff's complaint.

The action was brought to recover the sum of ninety dollars as extra compensation, in addition to freight and charges, for delivering a cargo at a pier other than the one at which the plaintiffs usually delivered.

It appeared on the trial that the boat upon which the property in question had been brought to the City of New York, belonging to and in the employ of the plaintiff, having arrived at its place of destination, was moored at the usual landing place of the plaintiff. Notice of the arrival, and of the plaintiff's readiness to deliver, was immediately given to the defendants, the owners and consignees of the property, together with the further notice that the property would be subject to lighterage, in addition to the freight and charges, if taken out elsewhere than in the slip specified, which was the usual landing place of the plaintiff.

Upon this notice being served on the defendants, the plaintiff was requested by a note in writing, signed in the defendant's name "per F. S. Hall" to move the boat from Pier 7 to Pier 3, to deliver cargo, etc.

Under this order and request the boat was moved to the place designated by the defendants, and the cargo in question was there delivered. The usual and customary charge for lighterage under such circumstances was fifty-four dollars, the charge including compensation for the continued responsibility of the carrier after the boat had arrived at a place of safety, and the use of the boat in the meantime.

The plaintiff having rested its case, the defendants' counsel moved the Court to non-suit the plaintiff and to dismiss the complaint, upon the ground that the proof on the part of the plaintiff did not tend to establish a cause of action against the

Western Transportation Co. v. Hawley.

defendants; upon the ground that the customs attempted to be shown were not sufficiently proved so as to be binding upon the defendants, and did not tend to establish a cause of action; and upon the further ground that demurrage was not chargeable against the defendants, unless stipulated for in the bill of lading; and upon the further ground that it was not sufficiently proven that the vessel was delayed in discharging her cargo by any conduct of the defendants or their servants; and upon the further ground. that it was not sufficiently proven that the request to tow the vessel from Pier 7 to Pier 3 was given by authority of the defendants.

The Court granted the motion upon each of said grounds, and the plaintiff insisted upon its right to go to the jury upon the questions of facts, and resisted the motion of the defendants' counsel; but the Court refused to allow the case to go to the jury, and ordered the complaint to be dismissed.

*John Hubbell,* for appellants.

1. The plaintiff having carried the property to the place of destination and given notice of its readiness to deliver the same at its usual and customary place of delivery, its contract was. fully performed. It was not bound to take them to the wharf or place which was near and most convenient to the consignee, or that which he specially directed, unless it had previously agreed to do so. (1 *Parsons on Contract,* 667; *Chickering* v. *Fowler,* 4 Pick., 371; *Angel on Carriers,* 282.)

II. The plaintiff was also entitled to recover for the demurrage claimed. The boat in question arrived in New York on the 19th of April; two days afterwards (on the 21st,) the plaintiff gave notice to the defendants that it was intended to charge five dollars a day demurrage, from and including the 22d, until discharged; three days being a reasonable time for its discharge. The defendants acquiesced in the notice, and detained the boat for seven days after the expiration of the time specified.

III. The doctrine that demurrage must be specified in the bill of lading does not apply in this case. The *master,* it is conceded, cannot collect demurrage, unless it is specified in the bill of lading, for the reason, that the bill of lading is his

only authority to collect anything, even the freight. But there is no such rule as affecting the *owner* of the vessel. He may recover for the improper detention of his vessel as against the consignee, without reference to the bill of lading.

*D. McMahon*, for the respondents.

I. In an action like the present, i. e., founded *on the breach of a contract to pay a reasonable compensation for delaying a vessel*, demurrage is not chargeable against defendants, unless stipulated for in the bill of lading. (*Roberston* v. *Bethune*, 3 Johns., 342. (1.) Whatever might be the consequence of an action brought to recover damages for an unreasonable detention, yet such is not the present case. On the contract counted on, the appellants, we submit, cannot recover, unless a *contract to pay demurrage* and a breach of such contract are shown. (2.) The bill of lading introduced by appellant, and which is the proper evidence of the contract, shows nothing of the kind; it contains no stipulation to pay demurrage, nor does the plaintiff show that the defendants ever promised to pay the same. (3.) The mere request to move the barge from pier 7 to pier 3 on her arrival, and before bulk was broken, even if conceded to have been made by a person having authority from the defendants, does not imply any promise on the part of the defendants to pay demurrage.

II. Such an alleged custom to pay demurrage and lighterage, as was attempted to be proved in this case, would not be binding on the defendants unless they had ratified it, or a prior course of dealing with the plaintiff had existed, from which a ratification might be inferred. The evidence excluded any such idea.

III. The plaintiff counted on a contract with the defendants, that the latter should pay the extra expense occasioned by such removal. No such contract was proven here. The mere request to move, made by Mr. Hall, did not prove any contract by the defendants; Mr. Hall was not shown to be the agent of the defendants; and the bill of lading itself provided for the delivery to Hawley & Howe, 102 Broad Street, N. Y., which is opposite to pier 3, and not near pier 7.

BY THE COURT.—DALY, F. J.—The averment in the complaint was that the plaintiffs were ready and offered to deliver the property at the usual and ordinary place of delivery, but that the defendants requested them to deliver it at a different place, agreeing to pay them for delivering it at that place a reasonable compensation, together with the costs and charges incurred by so doing.

They proved that their usual place of delivery was Pier No. 7, East River; that immediately upon the arrival of the boat, they gave notice of their readiness to deliver at that place, advising the defendants that the property would be at the risk of the owner or consignee, when landed on the wharf, and that it would be subject to lighterage, in addition to freight and charges, if taken out elsewhere than in the slip. After the delivery of this notice to the defendants, the plaintiffs received a written request to send the boat to Pier No. 3, East River, to deliver the cargo, Pier No. 3 being at the foot of Broad street, and the defendants' place of business being at No. 102 Broad street. To this written request the name of the defendants' firm was signed as follows: Hawley & Howe, per F. S. Hall; F. S. Hall, according to the bill of lading, having, as agent, shipped the cargo from Tonawanda by the plaintiffs' boat to the defendants' address. The plaintiffs accordingly sent their boat to pier No. 3, where the cargo was delivered to the defendants.

The plaintiffs are a corporation engaged in the transportation of merchandise between the cities of Buffalo and New York, by the way of the Erie Canal and the Hudson River. They proved that their usual place for the delivery of cargoes by canal boats was pier No. 7 East River, and the fact that the defendants' address, 102 Broad street, was stated in the bill of lading, did not oblige the plaintiffs to depart from their usual place of delivery, and deliver this particular cargo at a pier more contiguous to the defendants' place of business. Having notified the defendants of the arrival of the boat, and of their readiness to deliver at Pier No. 7, they did all, in my judgment, that they were required to do under the contract. (*Rowland v. Miln*, 2 Hilt. 150; *Ostrander v. Brown*, 15 Johns. 39; *Gibson v. Culver*, 17 Wend. 305.

The facts that the defendants were notified that if the property were taken out elsewhere than at Pier No. 7, lighterage would be charged, and that afterwards a written request to send the boat to Pier No. 3 came in their name, signed by the person who acted as agent in shipping the property to them at Tonawanda, who had been seen in and about their office, and who assumed in that letter to act as their agent, and that the property was delivered to them at Pier No. 3, were sufficient, in my judgment, to warrant a finding on the part of the Jury that it was by the defendants' request that the boat was sent to Pier No. 3. Very slight evidence under such circumstances should suffice; the defendants, now that parties may be witnesses in their own case, having it in their power to show at once if the fact were otherwise, that the order sent in their name was without their knowledge or authority. And the sending of such a request after they had been notified that a charge in such a case would be made for lighterage would be sufficient to support an implied *assumpsit* that they would pay what was customary, if any custom existed, or if not, a reasonable compensation.

I do not think that the evidence showed that the tariff of charges for lighterage agreed upon by the transportation companies had been so generally acquiesced in as to become established as a custom, or that any custom existed as to the right to demand lighterage in such cases. Indeed, I do not understand how the term can be considered applicable to such a case, the ordinary signification of lighterage being the price paid for unloading ships by lighters or boats. Here there was nothing of the kind, but simply the unloading of a canal boat at one wharf or pier instead of another. The term as used in the plaintiffs' printed notice undoubtedly meant additional compensation beyond the freight and ordinary charges, and this the defendants, in my opinion, were obliged to pay, not in consequence of an established custom, but from an implied understanding that they would pay what was fair and reasonable, and what would be a reasonable compensation could be determined by the jury upon the evidence.

No right to exact demurrage was shown. Demurrage is recoverable only where it has been expressly stipulated for;

Western Transportation Co. v. Hawley.

though, where there has been an unreasonable or improper detention of the vessel by the act of the freighter or consignee, damages may be recovered by the owner. (*Evans* v. *Foster*, 1 Barn. and Ad. 118; *Robertson* v. *Bethuné*, 3 Johns. 342; *Clendaniel* v. *Tuckerman*, 17 Barb. 191.) There was no proof here as to the time when the boat was sent to Pier No. 3. It appeared simply that she arrived on the 19th of April; that the request to deliver at Pier No. 3 was sent upon that day, and that the cargo was not discharged until the 29th of April. Ten days elapsed from the day of her arrival until the day of her final discharge. But whether the delay was caused by the defendants or not, assuming it to have been an unreasonable length of time, does not appear. The only evidence was the service upon the defendants of a notice that they would be charged $5 a day demurrage after the 21st of April (the day of the notice,) until the discharge.

It was shown that the actual expense for towing the boat from Pier No. 7 to No. 3 would be $3; but the plaintiffs' claim upon the implied agreement for extra compensation would not be limited to the amount actually paid out by them for towing the vessel from one pier to another. It was in evidence that it was necessary in the transportation business for the various companies generally to have some place for receiving property brought by them to the city by canal. It was shown that the plaintiffs had a pier for that purpose, and it is inferable from that fact that it was more convenient for them and facilitated their business to deliver their cargoes there rather than elsewhere. The transportation companies had agreed among themselves as to a tariff of prices which had no reference whatever to the distance to which the vessel might be moved about the city, but was demanded if the property was taken out elsewhere than in the slip where cargoes were ordinarily delivered. This was the express stipulation in the printed notice served by the plaintiffs before they received the order to send the boat to pier No. 3, and under this agreement, they were entitled, "in addition to freight and charges," to an extra compensation, the amount of which, under the circumstances, could be fixed only by the jury.

A new trial, therefore, should be granted.

BRADY, J.—I concur.

HILTON, J. (dissenting.)—I agree that the question as to what would be a reasonable compensation for towing the barge from Pier 7 to Pier 3 should have been submitted to the jury, but on looking into the printed case I find that, apart from the alleged custom upon which this action is sought to be maintained, but which was not established, the only proof upon the question of compensation was, that it would cost three dollars to remove the barge from one pier to the other. It certainly cannot be material to order a new trial for so small a sum, and I think in this case we should apply the maxim "*De minimus non curat lex*," and affirm the judgment.

Judgment reversed, and a new trial ordered.