WARREN *vs.* *The inhabitants of* LITCHFIELD.

After verdict, the court will support the declaration by every legal intendment, if there is nothing material on record to prevent it.

Therefore where the plaintiff declared against a town, that a certain bridge in it was out of repair, by reason whereof *his* horse, of the value of seventy five dollars, harnessed in *a* chaise, was drowned, and the harness injured to the value of fifteen dollars ; and the jury found for the plaintiff, with damages to *the* amount of seventy two dollars and fifty cents ;—the declaration, after verdict, was held well enough, the damages being taken to refer to the horse which the plaintiff alleged to be his, and not to the harness, to which he did not set forth any title.

Whether the merits of a motion in arrest of judgment, made in the court below for defects apparent on the face of the declaration, can be brought before this court by summary exceptions, under *Stat.* 1821, *ch.* 93, *sec.* 5,—*dubitatur.*

THIS was an action of the case, in which the plaintiff declared that a certain bridge in *Litchfield*, which the inhabitants were bound to maintain, on a certain time was out of repair ; " by reason whereof the plaintiff's horse, harnessed in a chaise, and under the care of a careful driver, in attempting to pass over said bridge, was, with

said chaise and harness, precipitated therefrom into the water beneath, and the said horse was drowned, and the said chaise greatly injured, and the life of the driver greatly endangered. And the said plaintiff avers that the value of the horse was seventy five dollars, and the injury to the chaise and harness equal to fifteen dollars more. And the plaintiff says that said inhabitants had due notice of said defect and want of repair. Whereby an action hath accrued to recover of said inhabitants the amount of damages by him sustained as aforesaid," &c.

It was proved at the trial before *Smith J.* in the court below, that the defendants had undertaken to rebuild the bridge, a short time before the accident mentioned in the declaration; and had made some progress in the work, with all reasonable despatch. On the day alluded to, the bridge appeared safe, as usual, except that the railing was taken away. But the planks had been ripped up, and one of the outside string-pieces removed; after which the planks were laid down as before, but not fastened. The bridge in this condition could be safely passed, and had been so passed a day or two before, by travelling over the side where the string-pieces remained; but the plaintiff's servant, inclining a little towards the weak side, was precipitated into the river, the planks on that side being destitute of support. There was nothing to draw his attention to the unsafe condition of the bridge; nor did he make inquiry on that day as to its situation; though it appeared that he was informed about a fortnight previous that it was then unsafe, and that it probably would not be finished under four or five weeks.

The judge instructed the jury that if they were satisfied, from the evidence, that the deficiency was concealed from observation by the planks placed over it; that the plaintiff's servant had conducted with ordinary care and prudence when he attempted to pass the bridge; and that he had no notice, or had no reason to conclude, from the appearance of the bridge and other circumstances, that the same was unsafe and dangerous to be passed; they ought to find for the plaintiff; which they did, assessing his damages at seventy-two dollars and fifty cents.

The defendants then moved in arrest of judgment, because it was

not alleged in the declaration that the chaise, for the injury to which damages were claimed, was the property of the plaintiff, nor did it appear therein that the plaintiff had any title to damages for that injury.

But the Judge overruled the motion. Whereupon the defendants filed exceptions to this opinion; and also to his instructions to the jury; and brought the cause up pursuant to the statute.

*Sprague* and *Robinson,* in support of the exceptions, contended that the judgment ought to have been arrested; because this was not the case of a title defectively set out; but of a want of any title. It was a defect inherent in the elements of the plaintiff's case, and was incurable. There is no allegation of property, general or special, in the chaise; yet the damages are general, applying to the whole declaration; and this being bad in part, the judgment must be arrested *in toto.* For the plaintiff's title in the chaise should have been stated expressly, and not left to be made out by implication. It does not even appear that the driver was the plaintiffs servant. He might, in perfect consistency with the truth of the declaration, have been the bailee of the horse for hire, and travelling in his own chaise. 5 *Dane's Abr. ch.* 146, *art.* 7, *sec.* 7; 1 *Chitty's Pl.* 367; 2 *Saund.* 379 *note* 13; 1 *Ld. Raym.* 239; *Cas. temp. Hardw.* 118; 2 *Stra.* 1023; 5 *Com. Dig. Pleader,* 3 *M.* 9; *Cro. Jac.* 46; *Joce v. Mills,* 2 *Salk.* 640; 2 *Ld. Raym.* 890; *Little v. Thompson,* 5 *Greenl.* 228; *Trevor v. Wall,* 1 *D. & E.* 153; *Hancock v. Haywood,* 3 *D. & E.* 435; *Williams v. The Hingham Turnpike,* 4 *Pick.* 341; *Stanwood v. Scovel, ib.* 422.

As to the instructions to the jury, they insisted that the knowledge which the driver had, a fortnight before the accident, was sufficient to have put him on his guard, and to have led him, as a prudent man, to have inquired into the state of the bridge, before he attempted to pass it. And as a due degree of caution on his part would have prevented the injury, the defendants were not liable; and the jury ought to have been so instructed. *Farnum v. Concord,* 2 *N. Hamp.* 392.

*Allen,* for the plaintiff, cited 5 *Dane's Abr.* 228; 3 *Bl. Com.* 394; *Fuller v. Holden,* 4 *Mass.* 498; *Moore v. Boswell,* 5 *Mass.*

306; *Kingsley v. Bill*, 9 *Mass.* 198; *Richardson v. Eastman*, 12 *Mass.* 505; *Colt v. Root*, 17 *Mass.* 235; *Ward v. Bartholomew*, 6 *Pick.* 409; *Pangburn v. Ramsay*, 11 *Johns.* 141; *Pinckney v. East Hundred*, 3 *Saund.* 379; 6 *Pick.* 409.

The opinion of the Court was read in the following term as drawn up by

MELLEN C. J. We will first consider the motion in arrest of judgment.

It is well observed in the case of *Bayard v. Malcolm & al.* 2 *Johns.* 550, that " it has been repeatedly decided that, after verdict, the court will do what it can to help a declaration ; that the court will suppose every thing right, unless the contrary appears on the record ; and the general scope of the authorities is, that, after verdict, every legal intendment is to be admitted in its support." See also, 1 *Salk.* 29 ; 3 *Burr.* 1725 ; 1 *Wils.* 255 ; 1 *Saund.* 128. There are numerous cases in which the question has been examined, what imperfections or omissions in a declaration are cured by verdict, and it is a vain attempt to reconcile them. There is, at the present day, less strictness than there formerly was, and an increasing disposition in courts to support a declaration, after verdict, by legal intendment. In the case of *Little v. Thompson*, cited by the defendant's counsel, we had occasion to examine several of the authorities on the subject. There a severe penalty was demanded in an action of debt ; but the declaration omitted an essential averment, namely, that the defendant took and carried away the logs, and disposed of them, without the consent of *Little* the plaintiff. The case was not brought within the statute on which the action was founded. No title was set forth that would sustain an action of debt ; and, according to the general principle of law, a verdict could not cure such a material defect. In such a case, the court, on a motion in arrest of judgment, would not presume the defendant guilty of an offence or wrong, not charged. In *Pangburn v. Ramsay*, 11 *Johns.* 141. *Spencer J.,* in delivering the opinion of the court, says, " Where there is a defect, imperfection or omission, yet if the issue joined

be such as necessarily required, on trial, proof of the facts defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct or the jury would have given the verdict, such defect, imperfection or omission is cured by the common law." The principle here laid down goes much further in favor of sustaining a declaration, than any of the cases cited in *Little v. Thompson* in the opinion delivered. So also in *Ward v. Bartholomew*, cited by the counsel for the plaintiff, where the demandant had omitted to allege his seisin of the demanded premises, and the jury found that the tenant had disseised him, the court declined arresting the judgment, on the ground that the jury could not have found that the tenant disseised the demandant, unless he was seised. These cases show how much the court will intend in favor of a declaration, after verdict, for the purpose of sustaining it. It is a well settled principle of the common law that where the declaration contains two or more counts, one of which is bad, and a general verdict for damages is given, the judgment must be arrested; though in this State, the abovementioned principle is done away by the third section of the statute of 1830, *ch.* 463. In the case before us, however, the declaration contains but one count; still it is contended that in that count the plaintiff demands damages for the loss of his horse and an injury done to the chaise in which he was harnessed, at the time he was precipitated from the bridge; and yet there is no averment in the declaration that he owned the chaise or the harness. This is true. And for this reason it is contended that judgment cannot be legally rendered on the verdict; as the damages must be intended as given, as well for the injury done to the chaise as for the loss of the horse. The first inquiry is whether the principle contended for is applicable to a declaration containing only one count, describing several articles of property, to some of which no title is set forth. The case of *Joce v. Mills*, 2 *Salk.* 640, seems to support the above position, and we do not perceive that the case of *Pinkney vs. Inhabitants of East Hundred*, 3 *Saund.* 379 is opposed to it. That was decided on demurrer; and there can be no question that where there is a demurrer to the whole declaration, the plaintiff ought to have judgment for that which is

well laid and be barred for the residue ; and in such a case the dam-
ages will be assessed according to the right as alleged and established.
It will be more useful carefully to examine the declaration, and see
what its averments are, and what the plaintiff's claims are.   The
language employed in relation to the horse clearly amounts to an al-
legation of the plaintiff's ownership ; but there is no averment that
he owned either the chaise or harness.   The averment is, " by rea-
son whereof the said plaintiff's horse, harnessed in a chaise, and
under the care of a careful driver, &c. &c. with said chaise and har-
ness, was drowned, and the said chaise greatly injured and the life
of the driver greatly endangered."   The value of the horse is al-
leged to have been $75 ; and the injury to the chaise to have been
equal to $15.   The verdict was returned for $72 50.   The con-
cluding averment is that an action hath accrued to the plaintiff to
recover the amount of damages by him sustained as aforesaid.   And
now from all these averments and facts, appearing on the record,
what is the legal intendment, admissible in support of the verdict ?
The plaintiff contends that the chaise is named in the declaration,
merely as descriptive of the manner in which his horse was travel-
ling at the time of the disaster ; and that the injury done to the
chaise, and the danger to the life of the driver are mentioned as de-
scriptive of the consequences of the defendant's neglect in regard
to the bridge ; and not as a ground of claim of damages for either
of those consequences.   The language will admit of this construc-
tion.   The horse is called " the plaintiff's horse"—the chaise is
merely called " a chaise."   If this mode of reasoning may be called
very ingenious, still we do not perceive that there is any fallacy in
it ; and when we consider that the alleged value of the horse was
$75, and that the verdict is less than that sum ; and when we con-
sider also that the plaintiff in the declaration asserts an ownership of
the horse, but not of the chaise or the harness, there is reason for
supposing that the damages were assessed for the loss of the horse,
being his estimated value, without any reference to the injury done
to the chaise, or the danger to which the life of the driver was ex-
posed ; for neither of which had the plaintiff any legal right to re-
cover damages.   We may here properly use the language before

quoted from the case of *Bayard v. Malcolm, & al.* viz : " the court will suppose every thing right, unless the contrary appears on the record." The court will suppose that the sum expressed in the verdict was to compensate the plaintiff for the damages by him sustained, and for no other purpose. For these reasons the exception to the decision of the court of Common Pleas, overruling the motion in arrest of judgment, is not sustained.

We think it proper here to subjoin that we have serious doubts whether the merits of the motion in arrest of judgment are regularly before us on the exception alleged to the opinion of the court below, overruling that motion ; the facts on which the motion was predicated appear on the record. The 5th section of *Stat.* 1822, *ch.* 193, has evidently a reference to those cases where the question to be reserved depends on facts which do not appear on record ; and therefore they are to be summarily stated in an exception signed by the party excepting, and certified by the judge to be conformable to the truth of the case—a certificate perfectly useless and unmeaning where all the facts are on the record, as in this case. But as the question had been fully argued and was in fact before us, we concluded to decide it, as the court did in *Drowne v. Stimpson*, 2 *Mass.* 441, where the record was removed by writ of error instead of *certiorari.*

As to the exception to the instructions given to the jury, the facts are few and simple. The report states that the plaintiff's servant had not any notice or knowledge, or any reason to suppose, that the bridge was unsafe or dangerous, excepting that about thirteen days before the horse was drowned the driver was informed that the bridge would not be finished under four or five weeks, and that it was not considered safe to pass ; but by whom it was so considered it did not appear. All the facts tending to prove want of due care on the part of the driver were properly submitted to the jury, and with guarded instructions for their regulation. We perceive no incorrectness in them. This exception is also overruled, and there must be

*Judgment for the plaintiff.*